Albert P. Roberts Informal Opinion Town Attorney No. 2005-5 Town of Wappinger 1136 Route 9 Wappingers Falls, NY 12590
Dear Mr. Roberts:
You have requested an opinion about the authority of a town supervisor under emergency conditions. Your request arises because of two recent situations involving the Town of Wappinger and Dutchess County, within which the Town is located.
One situation concerned the Town Supervisor's issuing an emergency order closing a portion of a county road because of a gasoline spill. A gas truck overturned on a county road that passes through the Town of Wappinger and discharged 12,000 gallons of gasoline. The Town Supervisor declared a state of emergency and issued an executive order closing a portion of the road, part of which was located within the Town. Dutchess County officials objected to the closure.
The other situation concerned the Dutchess County Department of Emergency Response, which dispatches ambulances to the Town of Wappinger in response to 911 calls. Local fire officers and residents of the Town had complained that the ambulance company with which the Town had contracted was not responding promptly to emergencies. The Town Supervisor therefore declared a state of emergency and issued executive orders "direct[ing]" the Dutchess County Department of Emergency Response to dispatch ambulances from another company if the primary company did not dispatch one within five minutes of a reported incident. When the County objected to the order, the Town Supervisor issued new orders "authoriz[ing]" the County to dispatch other ambulances.
These situations raise two similar but distinct questions. The first is whether the Town Supervisor may declare a state of emergency over, and issue orders with respect to, property owned by another municipality. The second is whether the Town Supervisor may, under a declared state of emergency, direct the use of the resources of another municipality. You have requested this opinion in anticipation of future emergency situations rather than as an evaluation of the Town Supervisor's past acts.[1]
Analysis
The emergency powers of a town supervisor, as the chief executive of the town, see Executive Law § 20(2)(f)(4), are set forth in Article 2-B of the Executive Law. The Legislature has authorized the declaration of a local state of emergency under limited circumstances, upon an appropriate finding by the town supervisor. Section 24 of the Executive Law provides that
 [n]otwithstanding any inconsistent provision of law, general or special, in the event of a disaster,[2]
rioting, catastrophe, or similar public emergency within the territorial limits of any county, city, town or village, or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive thereof that the public safety is imperiled thereby, such chief executive may proclaim a local state of emergency within any part or all of the territorial limits of such local government . . . . Following such proclamation and during the continuance of such local state of emergency, the chief executive may promulgate local emergency orders to protect life and property or to bring the emergency situation under control. As illustration, such orders may, within any part or all of the territorial limits of such local government, provide for:
 a. . . . the prohibition and control of pedestrian and vehicular traffic, except essential emergency vehicles and personnel
. . .
 e. the prohibition and control of the presence of persons on public streets and places . . . .
Id. § 24(1).
We have previously concluded that the chief executive of a county, city, town or village may proclaim a state of emergency with respect to State-owned property within the territorial limits of that local government. See 1980 Op. Att'y Gen. 19. Our reasoning was that section 24 makes no distinction by virtue of the ownership of property: "As long as the property is within the territorial limits of the locality . . . the local chief executive may declare a state of emergency." Id. By the same reasoning, the Town Supervisor could declare a local state of emergency over property owned by another municipality, as long as it was within the Town's boundaries.
Concomitant with the Town Supervisor's ability to declare a local state of emergency within the boundaries of his town is the power to promulgate emergency orders with respect to property within those boundaries. Executive Law § 24(1). Again, section 24 makes no distinctions based on ownership of property within the municipality's boundaries: "[S]uch orders may, within any part or all of the territorial limits of such local government, provide for . . . ." Id. Therefore, the Town Supervisor may, under a declared local state of emergency, promulgate orders with respect to property owned by another municipality that lies within the Town's boundaries.
The Town Supervisor may not, however, direct the use of the resources of another municipality in an emergency without that municipality's consent. The Town Supervisor is authorized to use "any and all facilities, equipment, supplies, personnel and other resources of his political subdivision" to cope with an emergency.Id. § 25(1) (emphasis added). With respect to other municipalities, the Town Supervisor is empowered only to "request and accept" assistance from any other political subdivision "on such terms and conditions as may be mutually agreed to by the chief executives of the requesting and assisting political subdivisions." Id. § 25(3). The specific grant of authority to "request and accept" voluntary assistance precludes reading the statute to allow a town supervisor to direct the use of the resources of another political subdivision without that municipality's consent. See 1980 Op. Att'y Gen. 19 (chief executive of municipality may use buses owned by school district to cope with emergency only if school district agrees). The chief executives of other municipalities, while perhaps willing to assist the municipality that is in a state of emergency, have obligations to their own communities. Thus, the chief executive of the assisting municipality, upon the receipt of a request for aid, may provide resources "on such terms and conditions as he may deem necessary to promote the public welfare and protect the interests" of his municipality. Id. § 25(4).
Any other rule runs the risk of creating chaos. If municipal chief executives could commandeer the resources of neighboring localities or the county, those resources might quickly find themselves subject to conflicting orders and claims, particularly if the emergency spans multiple jurisdictions. Cf. 1979 Op. Att'y Gen. 21 (chief executives of county and political subdivision within county each have independent authority to declare emergency without other jurisdiction's prior concurrence). In a state of emergency, however, it is of the utmost importance that the lines of authority be clear and undisputed. Article 2-B signals a strong preference for using existing lines of authority to coordinate emergency responses. See, e.g., Executive Law § 23(4) and (7)(b)(1) and (4) (local disaster-preparedness plans); id. § 26(2)(county-coordinated assistance). This minimizes the risk of bureaucratic confusion and conflict during an emergency situation.
For the reasons discussed above, we conclude that the Town Supervisor may declare a state of emergency over and promulgate orders with respect to property owned by another municipality that lies within the Town's boundaries, but that he may not direct the use of the resources of another municipality without that municipality's consent. The Town Supervisor may request and accept assistance on terms mutually agreeable to each municipality.
The Attorney General renders formal opinions only to officers and departments of State government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD, Assistant Solicitor General
In Charge of Opinions By: BENJAMIN N. GUTMAN Assistant Solicitor General
[1] You have not asked whether the Town Supervisor properly declared states of emergency in these situations, and we offer no opinion on the matter. We also do not consider any agreement between the Town of Wappinger and Dutchess County with respect to the emergency dispatch system. The terms of this agreement may vary the general principles that we discuss in this opinion.
[2] A "disaster" is defined as the "occurrence or imminent threat of wide spread or severe damage, injury, or loss of life or property resulting from any natural or man-made causes, including, but not limited to, fire, flood, earthquake, hurricane, tornado, high water, landslide, mudslide, wind, storm, wave action, volcanic activity, epidemic, air contamination, blight, drought, infestation, explosion, radiological accident, water contamination, bridge failure or bridge collapse." Executive Law § 20(2)(a).